UNITED STATES BANKRUPTCY COURT
WESTERN DISTRICT OF VIRGINIA
LYNCHBURG (CHARLOTTESVILLE) DIVISION


IN RE: FRANK A. PASSARELLI,

        Debtor.

Chapter 13
Case No. 17-61972-RBC


**RESPONSE OF NANCY L. WHEELER TO DEBTOR'S OBJECTION TO CLAIM**


Creditor, Nancy L. Wheeler, by counsel, respectfully states the following as her response to the Debtor's Objection to Claim.

FACTS

Ms. Wheeler and the Debtor are divorced from each other, and Ms. Wheeler's claim is based upon Debtor's failure to pay a domestic support obligation.  On February 10, 2015, Ms. Wheeler and the Debtor entered into a Property Settlement Agreement, a copy of which is attached as **Exhibit A** (the "PSA").  On February 17, 2016, the Culpeper Circuit Court entered a final order of divorce between the parties which incorporated the PSA. A copy of the Divorce Order is attached as **Exhibit B** (the "Divorce Order").

Pursuant to the Divorce Order, Debtor was required to pay Ms. Wheeler a total of $3,200.00 on the first day of each month beginning on January 1, 2016 (the "Support Payment"). This payment was composed of the following amounts: $2,500.00 until the death of either party (the "Spousal Support") (*see* Section D.2 of the Divorce Order); $250.00 for an outstanding arrearage in the payment of spousal support until the arrearage was paid in full (the "Arrearage Payment") (*see* Section D.4 of the Divorce Order); and $450.00 until an additional sum of $26,500.00 was paid in full (the "Installment Payment") (*see* Section E.1 of the Divorce Order).

While the Debtor has periodically made payments to Ms. Wheeler, he has been in default of the Support Payments since the Divorce Order was entered and has been found in contempt of court three times for missed Support Payments. On March 23, 2017, the Culpeper Circuit Court entered an order finding the Defendant in contempt for failing to make required payments and awarded attorney's fees of $1,877.17. A copy of this order is attached as **Exhibit C** ("Contempt 1"). On May 19, 2017, the Culpeper Circuit Court again entered an order finding the Defendant in contempt for failing to make required payments and awarding $600.00 in attorney's fees. A copy of this order is attached as **Exhibit D** ("Contempt 2").[1]

On October 12, 2017, Debtor filed a voluntary Chapter 13 Petition (the "Petition"). Debtor listed Ms. Wheeler's claim in Schedule E/F of the Petition as follows:

1. Claim 2.2: a priority (domestic support obligation) unsecured claim of $18,000.00 incurred April 1, 2017;
2. Claim 4.2: a nonpriority unsecured claim purported to be held by Ms. Wheeler's divorce attorney, John H. Kitzmann, in the amount of $600.00 for legal fees, incurred July 10, 2017; and
3. Claim 4.5: a nonpriority unsecured claim of $26,500.00 incurred "January 1, 2019" based on a promissory note.

In Section 2(B) of the Debtor's plan (the "Plan"), Debtor proposes payment of $18,000.00 to Ms. Wheeler listed as "DSO – Spousal Support" as a priority creditor. In Section 4(A) the Plan estimates a distribution of 5% to allowed non-priority unsecured claims.

On February 14, 2018, Ms. Wheeler filed a proof of claim in the amount of $33,300.00, which includes Support Payments of $31,200.00 from January 1, 2017 through October 1, 2017, less one $800.00 payment, a nonpriority unsecured claim of $600.00 for the attorney's fees

---

[1]The third contempt finding occurred post-petition. On November 9, 2017, the Culpeper Circuit Court entered an order finding that the Debtor had purged himself of Contempt 1 but had not yet purged himself of Contempt 2. A copy of this order is attached as **Exhibit E** ("Contempt 3"). The Culpeper Circuit Court ordered the Debtor to pay an additional $500.00 in attorney's fees to Ms. Wheeler.

awarded in Contempt 2, and $1,500.00 in attorney's fees incurred in the filing of the proof of claim (pursuant to Sections 27(e) and 32 of the PSA).  Debtor filed an objection contending that Ms. Wheeler's claim should consist of $18,000.00 of priority spousal support and $14,700.00 of non-priority unsecured debt.[2]

ARGUMENT

The Debtor's Objection should be overruled because the Support Payments are domestic support obligations entitled to priority under 11 U.S.C § 507(a)(1)(A).

Reflecting a strong public policy favoring the financial security of former spouses, 11 U.S.C § 507(a)(1)(A) requires that claims for domestic support obligations be given first priority in the payment of claims in bankruptcy.  Pursuant to 11 U.S.C § 101(14A), the term "domestic support obligation"  is defined as a "debt … owed to or recoverable by a … former spouse in the nature of alimony, maintenance, or support of such … former spouse … without regard to whether such debt is expressly so designated," and "established … by reason of applicable provision of … a property settlement agreement … [or] an order of a court of record." As set forth below, the Support Payments in the present case are all "domestic support obligations" under 11 U.S.C § 101(14A) entitled to classification as priority claims.

---

[2]Though these additional amounts are not included in the proof of claim, the Debtor has failed to make many of the required post-petition Support Payments that have come due. Pursuant to the Divorce Order, from November 2017 through April 2018, the Debtor was obligated to make six payments totaling $18,600.00. The Debtor has made only two payments, which total $7,500.00, leaving a balance owed of $11,100.00 for post-petition Support Payments under the Divorce Order. Pursuant to 11 U.S.C. § 1325(a)(8), plan confirmation cannot take place until the Debtor has made the required post-petition payments.

1.    *The parties intended that the Support Payments be treated as "in the nature of" support.*

The "critical" determination in classifying indebtedness as support (which is entitled to priority) or a division of property (which is not entitled to priority) is the intent of the parties at the time of the execution of the separation agreement. *In re Ludwig*, 502 B.R. 466, 468-69 (Bankr. W.D. Va. 2013); *In re Monsour*, 372 B.R. 272, 281 (Bankr. W.D. Va. 2007). "If proof of intent is clear, then the determination of intent will control the classification of the obligation." *Id*. In determining whether the parties intended the obligation to be in the nature of alimony, support, or maintenance, the Court looks to four factors for guidance: (1) the language and substance of the agreement; (2) the relative financial position of the parties when they entered the agreement; (3) the function of the obligation within the agreement; and (4) evidence of overbearing at the time of the agreement. *In re Ludwig*, 502 B.R. at 469. "A written agreement between the parties is persuasive evidence of intent. Thus, if the agreement between the parties clearly shows that the parties intended the debt to reflect either support or a property settlement, then that characterization will normally control." *In re Bruce*, No. 16-60489 (Bankr. W.D. Va. 2016) (citations omitted).

The first factor, the language and substance of the agreement, clearly shows that the Parties intended the Debtor's monthly Support Payment to be in the nature of support for Ms. Wheeler.  The monthly Support Payment of $3,200.00 is made up of the following three payments: the Spousal Support payment of $2,500.00, the Arrearage Payment of $250.00, and the Installment Payment of $450.00.  The Support Payment and the Installment Payment both derive from the PSA and are also addressed in the Divorce Order, while the Arrearage Payment is addressed only in the Divorce Order. The language of both the PSA and the Divorce Order is therefore central to the analysis of intent.

4

The Divorce Order recited Section 27 of the PSA, which was captioned "**SPOUSAL SUPPORT**," in setting forth the following relevant terms of the award of Spousal Support:

> The Order of this Court as to … *spousal support* are [sic] set forth in the spousal support provision of the … [PSA], incorporated herein …
>
> (c) … Husband shall pay to Wife the sum of Two Thousand Five Hundred Dollars and No Cents ($2,500.00) for the support and maintenance of the Wife beginning on June 1, 2014 and continuing thereafter on the first day of each month.
>
> (d) … Husband and Wife further agree that Husband's *spousal support* obligation pursuant to this provision shall terminate only upon the death of either party….
>
> (e) If Husband fails to payor [sic] otherwise defaults on any of his obligations in this Agreement or all or part of Husband's liability for the obligations contained in this Agreement is discharged in bankruptcy, Husband agrees to pay the Wife enough money sufficient to pay any liability she incurs as a result within ten (10) days of being informed in writing that Wife incurred the liability and that these payments shall be in the nature of spousal support….

Divorce Order, Section D.2 (emphasis added). The PSA and the Divorce Order could not be clearer that the $2,500.00 payment was intended as spousal support.

The Divorce Order addressed the Arrearage Payment in Section D.4, stating that the Debtor was "in arrears in the payment of *spousal support* in the total amount of $6,400.… In addition to the monthly *spousal support obligation* set forth in this Order, Defendant shall pay the amount of $250 per month to Plaintiff beginning January 1, 2016 until the arrearage has been paid in full."  (Emphasis added). The Arrearage Payment consisted entirely of unpaid Spousal Support payments. Where the underlying obligation is in the nature of support, court orders requiring payment of arrearages on that obligation are likewise in the nature of support. *See Coon v. Henderson (In re Coon),* 522 B.R. 357, 362-63 (Bankr. M.D. Ala. 2014) (holding that state court judgment for alimony arrearages constituted an obligation in the nature of alimony). Thus, the Arrearage Payment in this case is in the nature of support.

Finally, the Divorce Order set forth the Installment Payment obligation, arising under Section 22 of the PSA, stating:

> Pursuant to the terms of the parties' Property Settlement Agreement, Defendant agreed to pay Plaintiff the sum of $32,000, being the sum owing under a certain promissory note between the parties and attached as Exhibit B to the Property Settlement Agreement. In satisfaction of such obligation, Defendant shall pay the principal sum of $26,500 to Plaintiff in installments of $450 per month beginning January 1, 2016 until the entire sum is paid in full. *This obligation is in the nature of support* but shall not be income to Plaintiff nor a deduction to Defendant.

Divorce Order Section E.1 (emphasis added). In light of the highlighted term, the intent of the state court to treat the Installment Payment as support is abundantly clear and given the fact that the Divorce Order was drafted by counsel for the parties it likewise makes clear that it was the intent of the parties themselves to treat the Installment Payment as a support obligation.

Further evidence of the intent of the parties is shown in Section 32 of the PSA which states that "none of the financial duties and responsibilities of the parties to each other specifically referenced herein shall be dischargeable in bankruptcy pursuant to Sections 523(a)(5) and 523(a)(15) of the Bankruptcy Code…."[3] Given that non-support obligations would be dischargeable under these statutory provisions, this further demonstrates the understanding and agreement of the parties that all components of the Support Payment were in the nature of support obligations. *See Inman v. Hearn (In re Inman)*, at p. 7, No. 10-17707-EPK (Bankr. S.D. Fla. 2012) (holding that parties' statement in their marital settlement agreement that the financial obligation would "not be dischargeable in bankruptcy … supports the conclusion that it was intended to be in the nature of alimony rather than a property settlement.")

---

[3]Pursuant to 11 U.S.C. § 523(a)(5), a discharge under Chapter 13 "does not discharge an individual debtor from any debt, … for a domestic support obligation…." Under 11 U.S.C. § 523(a)(15) a discharge under Chapter 13 "does not discharge an individual debtor from any debt, … to a spouse, former spouse, or child of the debtor and not of the kind described in paragraph (5) that is incurred by the debtor in the course of a divorce or separation or in connection with a separation agreement, divorce decree or other order of a court of record…."

In conclusion, the intent of the state court and the parties is manifest. The language of the Divorce Order demonstrates the state court's intent that each component of the Support Payment was to be in the nature of support. Bankruptcy courts have consistently ruled that the intention of the state court is a primary focus when a bankruptcy court makes a § 507(a)(1) determination. *See, e.g., In re: Kurt Darren Andrews*, No. BK 4:09-bk-72051M (Bankr. W.D. Ark. 2010) (citing *Morel v. Morel (In re Morel)*, 983 F.2d. 104, 105 n.3 (8th Cir. 1992)). The language of the PSA is likewise clear in demonstrating the intent of the parties that all components of the Support Payment be in the nature of support, and this Court has recognized the primary importance of the parties' intent. *In re Ludwig*, 502 B.R. at 468-69; *In re Monsour*, 372 B.R. at 281.

The second factor the Court has identified, the relative financial position of the parties when they entered the agreement, supports a conclusion that the Support Payments are entitled to priority treatment. Ms. Wheeler would testify that at the time the PSA was executed her income was essentially zero and that of the Debtor was, to the best of her knowledge, well in excess of $100,000.00 per year. Given the lack of income on Ms. Wheeler's part, any funds she received were going to be used for her support.

The third factor the Court considers is the function of the obligation within the agreement. Courts look to see if the obligation serves to provide for the common necessities of the other spouse, whether it is for past or future obligations, whether it allocates joint debts, or whether it divides property. *In re Ludwig*, 502 B.R. at 470.

For the reasons set forth above, the Spousal Support and Arrearage payments provide for Ms. Wheeler's necessities, and they do not relate to prior or future obligations, joint debts, or a division of property, and are therefore properly characterized as in the nature of support.

The remaining component of the Support Payment, the Installment Payment, arises under Section 22 of the PSA. In Section 22 the parties agreed that "Wife shall *retain* all right, title and interest in Cavellini di Amore," (emphasis added), and Debtor waived any claim to the business.[4] Section 22 further provided that "Wife shall be entitled to any and all income generated from the Business." These provisions indicate that Ms. Wheeler was being permitted to retain the business as a future source of income. There is no indication that this was in any way a division of any asset.

The reason for the payment of $32,000.00 was that certain physical structures, a barn and some stables, that were part of the "marital residence" addressed in Section 16 of the PSA, were useful in the operation of the business. Under Section 16 the marital residence was, in effect, divided equally. While Ms. Wheeler asked if she could remove the barn and stables, the Debtor was under no obligation to agree to do so and, in fact, he declined to permit their removal. He was under no obligation pursuant to Section 16, or any other provision of the PSA, to compensate Ms. Wheeler in any way for his retention of the barn and stables as he had refinanced the marital residence and paid Ms. Wheeler for her interest in it.

Despite this, the parties agreed in the PSA that the Debtor would pay Ms. Wheeler $32,000.00, the appraised value of the barn and stables. The structures were essential to the wife's operation of the business and Debtor's voluntary payment of their value, when he was under no obligation to do so, is best characterized as a support payment to facilitate the wife's ability to maintain a future income stream. These types of "nest egg" payments have been recognized by other courts as obligations in the nature of support.

---

[4]The use of the word "retain" indicates that Ms. Wheeler was not being awarded something that previously belonged to the Debtor (i.e., property distribution), but was instead keeping something that already belonged to her.

In *In re Johnson*, 156 B.R. 338 (Bankr. M.D. Fla. 1993), a divorce court awarded the wife $70,000.00 for her equity in the marital residence which the husband was ordered to pay. When the husband defaulted and filed for bankruptcy the wife argued that the $70,000.00 payment was not a property distribution but was instead in the nature of support. The bankruptcy court agreed, finding that the marital residence had been a source of maintenance and support during the marriage and that the payment to the wife retained the same nature. *Id*. at 341. The court noted that if this were not the case, it would be a simple matter to disenfranchise the spouse who was not awarded the actual homestead in the divorce proceedings.

The court in *Inman* addressed the characterization of a lump sum payment structured as a promissory note in the parties' settlement agreement. *Inman*, at p. 6. Though the court reviewed a number of factors in determining whether the promissory was intended to be in the nature of support, it was not troubled by the fact that the support payment had been reduced to a lump sum that was going to handled in the fashion of a promissory note. The court found that the wife lacked income and the sums were going to be used for her support. *Id*. at pp. 6-8.

As in the foregoing cases, the purpose of the Installment Payment within the broader context of the PSA was to provide Ms. Wheeler with the means to support herself and thus the third *Ludwig* factor supports a finding that the Installment Payment was intended to be in the nature of support.

The fourth factor, evidence of overbearing at the time of the agreement, likewise supports a conclusion that the stated intent of the parties was their actual intent. There is no indication that either party exerted undue influence or control over the other and was thus able to force the other to agree to terms that were not in fact reflective of their true intent. The Debtor and Ms. Wheeler were both represented by experienced legal counsel at the time of the execution of the PSA and

the Divorce Order.  The Divorce Order was never appealed, and the only litigation in the divorce case after the entry of the Divorce Order related to the Debtor's contempt for failure to make payments under the Divorce Order.

For the foregoing reasons, the intent of the parties, as evidenced by the language of the PSA, the intent of the state court as evidence by the Divorce Order, and the substance of the PSA, was`` that all elements of the Support Payment be in the nature of support and the full amount of Ms. Wheeler's claim is therefore entitled to priority.

2.     *Ms. Wheeler is entitled to recover her attorney's fees in this court as a priority claim.*

Ms. Wheeler is also entitled to recover her attorney's fees incurred in filing the proof of claim and in addressing the Debtor's objection, and these fees are entitled to priority treatment as well. The PSA recites the Parties' agreement that Ms. Wheeler's attorney's fees in the present bankruptcy case are to be treated as being in the nature of support. Paragraph 32(b) states that "[i]n the event a party to this Agreement becomes a debtor in bankruptcy, … the creditor spouse shall be entitled to attorney fees and costs incurred in protecting his or her rights under this agreement, including support, in any such proceeding.… The non-filing party is entitled to full indemnity from the filing party and such indemnity is in the nature of a domestic support obligation."

The parties' agreement in the PSA regarding the treatment of fees is in accordance with applicable bankruptcy law.  The rule in the Fourth Circuit is that "[i]f the principal award is a domestic support obligation, the attorney's fees incidental to obtaining the domestic support obligation are also treated as a domestic support obligation." *In re Uzaldin*, 418 B.R. 166, 172 (Bankr. E.D. Va. 2009) (*citing Silansky v. Brodsky, Greenblatt & Renehan (In re Silansky)*, 897 F.2d 743 (4th Cir. 1990)). The obligations of the Debtor under the PSA and the state court decree

were domestic support obligations and the attorney's fees incurred in obtaining payment of those obligations are also a domestic support obligation entitled to priority.

> 3. *If the Court finds that not all of the Support Payments are in the nature of support, the payments must be reallocated.*

While Ms. Wheeler respectfully submits that all of the sums due should be treated as a priority claim, if the Court finds that the Support Payments are not in their entirety domestic support obligations an additional issue arises. It appears, though it is not certain on the present record, that the parties disagree about how payments that the Debtor has made should be credited. Under applicable Virginia law, a creditor may generally apply a payment to multiple obligations in the manner the creditor prefers. *See Wellington, Sears & Co. v. King*, 157 Va. 767, 773-774 (Va. 1932). The Debtor's objection requests that this Court amend the claim to bifurcate the amount owed into an $18,000.00 priority unsecured debt and a $14,700.00 non-priority unsecured debt. This request appears to disproportionately apply the Debtor's past payments to the Spousal Support obligations in order to decrease the portion of the claim entitled to priority. A chart showing the amounts due and payments made from January 2016 through October 2017 is attached as **Exhibit F**. Ms. Wheeler contends that the payments should be applied leaving the pre-petition balance shown in **Exhibit G**. In addition to the balances shown in Exhibit G, the Debtor owes monthly Spousal Support payments of $2,500.00 until the death of either party, and post-petition final balances of $900.00 in Arrearage Payments and $16,600.00 in Installment Payments under the Divorce Order.

CONCLUSION

In conclusion, the full amount of the Debtor's court ordered monthly payments to Ms. Wheeler is a domestic support obligation and is entitled to priority pursuant to 11 U.S.C § 507(a)(1)(A).   Nancy L. Wheeler respectfully requests that Debtor's Objection be overruled and that the Court award such further relief as it deems proper including requiring the debtor to reimburse Ms. Wheeler for her attorney's fees incurred herein.

Respectfully submitted,

**NANCY L. WHEELER**

by counsel.

**s/ Rebecca C. Hryvniak**
Rebecca C. Hryvniak, Esq.
Virginia State Bar No. 78946
Neal L. Walters, Esq.
Virginia State Bar No. 32048
Attorneys for United Bank
SCOTT│KRONER, PLC
418 East Water Street
Post Office Box 2737
Charlottesville, VA 22902
(434) 296-2161
(434) 293-2073 (fax)
Email: rhryvniak@scottkroner.com

**CERTIFICATE OF SERVICE**

I hereby certify that on April 6, 2018, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system, and I hereby certify that I have mailed by United States Postal Service the document to the following non-CM/ECF participants: N/A.

**s/Neal L. Walters**
Attorney for Nancy Wheeler
SCOTT│KRONER, PLC
418 East Water Street

Post Office Box 2737
Charlottesville, VA 22902
(434) 296-2161
(434) 293-2073 (fax)

# PROPERTY SETTLEMENT AGREEMENT

THIS PROPERTY SETTLEMENT AGREEMENT ("Agreement") is entered into this _10th_ day of _February_____, 2015 by and between Frank A. Passarelli ("Husband") and Nancy L. Wheeler ("Wife"). Husband and Wife may be referred to collectively as the "parties" or individually as a "party" from time to time in this Agreement.

WHEREAS, Husband and Wife were lawfully married on April 11, 1998 in Culpeper, Virginia; and

WHEREAS, there was one child born of the parties' marriage who is over the age of 18 and whose name and date of birth are: Madeline Grace Wheeler born January 9, 1994; and

WHEREAS, certain differences have arisen between the parties which appear to be irreconcilable, in consequence of which the parties have agreed to live separate and apart from each other and have lived separate and apart from each other since on or about June 1, 2013; and

WHEREAS, the parties hereto desire to enter into an agreement with respect to the rights of the parties regarding their respective estates and property now owned by them or which in the future may be acquired by either of them, and with respect to their rights, duties and obligations concerning the support of each other.

NOW THEREFORE, in consideration of the mutual covenants, promises and agreements herein contained, Husband and Wife mutually agree as follows:

1. **DISCLOSURE:** Husband and Wife have entered into this Agreement freely and voluntarily, upon mature consideration and upon the right to the advice of separate counsel. Husband and Wife acknowledge that Husband has been represented by Matthew McConnell, Esquire, and Wife has been represented by John H. Kitzmann, Esquire. Husband and Wife consent to the execution of this agreement and acknowledge that it has not been obtained by duress, fraud, or undue influence of any person. No representations of fact have been made by either party to the other except expressly set forth herein. Each has had full access to the books, records, and files of the other and has been provided a fair and reasonable disclosure of the nature, extent, and value of the separate and jointly owned property of the parties and the income and obligations of the parties. Further, each does hereby voluntarily and expressly waive any right to disclosure of the property or financial obligations of the other party beyond the disclosure provided. This Agreement and Stipulation is fair and equitable and entered into voluntarily for valuable consideration.

Husband and Wife acknowledge that they are entering into this Agreement of their own accord and without coercion or pressure of any kind; that they have sought and obtained



EXHIBIT

A

independent legal advice from counsel of their own selection or that they have been given the opportunity to do so and have declined to do so; that they have been duly apprised of their legal rights; that all the provisions of this Agreement, as well as all questions pertinent thereto, have been fully and satisfactorily explained to them; that they have given due consideration to such provisions and questions and understand them clearly; that the settlement embodied in this Agreement is in all respects acceptable to them, being consistent with the parties' income and assets, and ample for the parties' needs, and that accordingly they assent to all the provisions hereof and each agrees that they have received reasonable consideration for the transfers, waivers, and releases that each is making herein, that the terms of this Agreement are fair and are not unconscionable, and that neither party has been under duress during the negotiation and drafting of the terms of this Agreement or during their consideration of the terms of this Agreement.

2.    **PERSONAL LIVES:**  Husband and Wife agree that it shall be lawful for each party hereafter to live separate and apart, continuously and uninterrupted for the rest of their lives at such place or places as he or she may choose or deem fit and to conduct his or her personal and social life as freely and as fully as if he or she were sole and unmarried.

3.    **ENTIRE AGREEMENT:**  Husband and Wife acknowledge that this Agreement contains the entire understanding between Husband and Wife and that there are no representations, warranties, covenants or undertakings other than those expressly set forth herein.

4.    **REVOCATION PRIOR AGREEMENTS:**  By execution of this agreement, Husband and Wife hereby expressly revoke any and all prior separation and/or property settlement agreements heretofore discussed or executed between the parties.

5.    **SUBSEQUENT DIVORCE:**  Husband and Wife agree that upon entry of a divorce, or at any other time either party requests an appropriate order or decree, Husband and Wife shall petition the Court, jointly and/or individually, to affirm, ratify and incorporate the provisions of this agreement into such order or decree. Husband and Wife further agree that the validity of this Agreement does not depend upon a Court finding that it is fair and equitable and Husband and Wife acknowledge and agree that each shall be bound hereby in any event. Husband and Wife further agree that the incorporation of this Agreement into an order or decree shall not be a substitute for the contractual obligations hereunder and that the terms and provisions of this Agreement shall be effective and independent of such order or decree and shall not be merged therein.

6.    **ADDITIONAL INSTRUMENTS:**  Husband and Wife shall, from time to time, at the request of the other or his or her legal representative, execute, acknowledge and deliver to the other any and all further instruments or documents, including, but not limited to, deeds, title transfers, releases, contracts, documents and instruments, which may be reasonably required

and/or necessary to give full force and effect to the provisions of this agreement. If either party shall fail or refuse to comply with this provision, this Agreement shall constitute an actual grant, assignment and conveyance of property and rights in such matter and with such force and effect as shall be necessary to effectuate the terms of this Agreement.

7. **MODIFICATION AND WAIVER:** A modification or waiver of any of the provisions of this agreement shall be effective only if made in writing and executed with the same formality as this agreement. Failure of either party to insist upon strict performance, in whole or in part, of any of the provisions of this Agreement or to exercise any option or election called for, in whole or in part, by any of the provisions of this Agreement shall not be construed as a waiver of any subsequent default of the same or similar nature and the terms of this Agreement shall continue in full force and effect.

8. **CONSTRUCTION:** The terms and provisions of this Agreement shall be governed by and construed in accordance with the laws of the Commonwealth of Virginia without regard to conflict of law principles.

9. **NO PRESUMPTION OF AUTHORSHIP:** Husband and Wife acknowledge that this agreement is the result of extensive negotiation between the parties and/or their legal counsel and, as such, represents the work of both parties and/or their counsel. Accordingly, Husband and Wife agree that no presumption shall be made as to the interpretation of this document or any party thereof that this Agreement was drafted by either of the parties or his or her counsel.

10. **SEVERABILITY OF PROVISIONS:** If a court of competent jurisdiction shall, at any time, hold that any provision of this agreement is invalid or unenforceable, all other provisions of this agreement shall nevertheless continue in full force and effect. Such invalidity shall not invalidate the entire agreement.

11. **VALUATION:** Husband and Wife acknowledge that the usual and customary method for and the surest way of determining fair value of their property is to employ a competent individual trained in valuation techniques. In order to save cost, the parties have utilized such methods to his or her satisfaction and have elected to forego further use of such methods and to agree on the following divisions or equities without employment of any further formal appraisals and have negotiated and entered into this Agreement based on each party's own personal knowledge and access to the other's books, records and files and, in so doing assume full responsibility for the results thereafter.

12. **DISCOVERY:** Husband and Wife acknowledge that, ancillary to a divorce action, there are certain discovery procedures available such as written questions to the other party, sworn statements which may be obtained from witnesses including the other party and the

availability of process to summons written papers. In order to save cost, the parties have elected not to utilize such methods to his or her satisfaction and have elected to forego further use of such methods and to agree on the following divisions or equities without employment of any further formal discovery and have negotiated and entered into this Agreement based on each party's own personal knowledge and access to the other's books, records and files and, in so doing assume full responsibility for the results thereafter.

13.   **DEFINITIONS OF PROPERTY:**

(a)   Husband and Wife acknowledge that "separate property" is defined as (i) all property, real and personal, acquired by either party before the marriage; (ii) all property acquired during the marriage by bequest, devise, descent, survivorship, or gift from a source other than the other party; (iii) all property acquired during the marriage in exchange for or from the proceeds of sale of separate property, provided that such property acquired during the marriage is maintained as separate property; and (iv) any part of marital property which may be declared separate property pursuant to court order. Husband and Wife further acknowledge that income received from separate property during the marriage is separate property if not attributable to the personal effort of either party, that the increase in value of separate property during the marriage is separate property, unless marital property or the personal efforts of either party have contributed to such increases and then only to the extent of the increases in value attributed to such contributions. Husband and Wife further acknowledge that the personal efforts of either party must be significant and result in substantial appreciation of the separate property if any increase in value attributed thereto is to be considered marital property.

(b)   Husband and Wife acknowledge that "marital property" is defined as (i) all property titled in the names of both parties, whether as joint tenants, tenants by the entirety or otherwise; (ii) that part of any property classified as marital pursuant to court order; or (iii) all other property acquired by each party during the marriage which is not separate property as set forth in paragraph (a) above.

(c)   Husband and Wife acknowledge that the definitions of "separate property," "marital property" and "part marital and part separate property" are set forth in Virginia Code Sections 20-107.3(A)(1), (2) and (3) which is expressly incorporated by reference herein.

14.   **PROPERTY DISTRIBUTION CONSIDERATIONS:** Husband and Wife considered the following factors in arriving at their agreement on how to distribute marital property:

(a)   The contributions, monetary and non-monetary, of each party to the well-being of the family;

(b)     The contributions, monetary and non-monetary, of each party in the acquisition and care and maintenance of such marital property of the parties;

(c)     The duration of the marriage;

(d)     The ages and physical and mental condition of the parties;

(e)     The circumstances and factors which contributed to the dissolution of the marriage;

(f)     How and when specific items of such marital property were acquired;

(g)     The debts and liabilities of each spouse, the basis for such debts and liabilities, and the property which may serve as security for such debts and liabilities;

(h)     The liquid or non-liquid character of all marital property;

(i)     The tax consequences to each party; and

(j)     The use or expenditure of marital property by either of the parties for a nonmarital separate purpose or the dissipation of such funds, when such was done in anticipation of divorce or separation or after the last separation of the parties.

(k)     Such other factors as the parties deem necessary or appropriate to consider in order to arrive at a fair and equitable distribution of marital property.

15.     **RECONCILIATION:**  If subsequent to the execution of this agreement, the parties effect a reconciliation and resumption of the marital relationship between the parties, all provisions of this agreement will continue to be in full force and effect without abatement unless a written revocation is duly executed by the parties.

16.     **MARITAL RESIDENCE:**  Husband and Wife acknowledge that they own as tenants in common a certain parcel of real property and the improvements located thereon with the address 15763 Auburn Road, Culpeper, Virginia, hereinafter referred to as the "Marital Residence." Husband and Wife agree that Husband shall receive all right, title and interest in the Marital Residence free of any claim or interest of Wife and that Wife does hereby waive any claim or interest in the Marital Residence and agrees to transfer said interest subject to the terms and conditions of this Agreement. Husband and Wife further agree that for and in consideration of the terms of this Agreement and the payment of the amount called for below, Wife will bargain, sell, grant and convey, with Special Warranty and English Covenants of Title unto

Husband, her interest in the Marital Residence. Husband and Wife further agree that Husband shall refinance the mortgage and home equity line of credit to remove Wife's name from any liability for the mortgage or home equity line of credit and that Husband shall pay to Wife, in consideration of her interest in the Marital Residence, the sum of $233,742.00 in cash or certified funds immediately upon the completion of the refinance. Husband shall instruction the settlement agent that the $233,742.00 shall be paid to Wife at closing prior to any funds being distributed to Husband or funds being distributed to pay any debts or obligations of Husband. Only after the Wife receives this sum will she have an obligation to execute a deed conveying her interest in the Marital Residence to Husband. Any and all the documents the Wife must sign in order to permit the Husband to refinance the mortgage and the home equity line of credit must contain true, correct, and accurate information or Wife will not have any obligation to sign the documents and her failure to do so will not relieve the Husband from obligations to use his best efforts to refinance the mortgage and credit line currently encumbering the Marital Residence.

The Husband shall use his best efforts to refinance the mortgage and home equity line of credit encumbering the Marital Residence in order to make the payment to the Wife of $233,742.00 described in the immediately preceding paragraph even if that requires multiple attempts and the application to multiple different sources of financing. The Husband shall notify the Wife of each and every one of his attempts to refinance, the source of the refinancing, and the results of those attempts verbally and in writing upon demand of the Wife. If Wife demands such documentation, the Husband will provide to Wife all documentation submitted to secure refinancing and all documents showing that the refinancing has been approved or turned down. Husband agrees that he will inform the Wife of the name, address, and telephone number of the real estate attorney or other closing agent closing the loan refinancing the mortgage and the home equity line of credit. Husband agrees to share and to authorize the real estate attorney or other closing agent closing the refinancing to share all closing documents with Wife and any attorneys the Wife designates in writing within a reasonable time before the actual closing takes place and to discuss and reveal any other information concerning the refinancing the Wife requests by speaking directly with the Wife or to any attorney designated by her.

In the event the Husband cannot refinance after using his best efforts to do so, then at any time more than ninety (90) days from the date of this Agreement, at Wife's sole discretion, Wife can declare her obligation to bargain, sell, grant and convey her interests in the Marital Residence to the Husband and her waiver of her interest in the Marital Residence null and void. At such time, the parties shall and they hereby agree to list the Marital Residence for sale with a mutually selected real estate broker to sell the Marital Residence for or in excess of its fair market value and with sufficient proceeds from the sale to pay the costs of closing, to pay off the mortgage, and the home equity line of credit, and for the Wife to receive the sum of $233,742.00 which represents the Wife's interest in the Marital Residence. The parties agree that the Marital Residence will be listed for sale within thirty (30) days of the date Wife provides notice to Husband that the Marital Residence is to be sold. If the parties cannot agree upon a real estate

agent, then the Wife shall choose the agent and Husband shall sign all documents necessary for that agent to act as the real estate agent and to list the Marital Residence. The parties agree to sign the customary contract of sale when the Marital Residence is sold. When the Marital Residence is sold, the parties agree to execute a general warranty deed conveying the Marital Residence to the purchasers.

If for any reason the first real estate agent the parties select cannot or declines to continue as the parties' real estate agent, then the parties must mutually agree upon the next agent. In the event the parties cannot mutually agree on the next agent, then the parties shall resolve the dispute by coin flip. The parties can only change the real estate agent if they mutually agreed to do so. The parties agree that when they must mutually agree upon a different real estate agent pursuant to this Agreement that they shall agree upon their next real estate agent in such a manner that the Marital Residence shall always stay listed for sale and shall never come off the market.

When selling the Marital Residence, the parties agree that the initial listing price shall be a price recommended by their real estate agent. The parties agree to and shall follow the recommendation of the real estate agent in making any decreases in the listing price pursuant to the terms of this Agreement, and in determining whether any contract offer's contingencies are reasonable. They agree to accept any bona fide contract if the contract of sale price is at least equal to 95% of the initial listing price, or any future reduced listing price, and generates proceeds sufficient to pay the costs of sale, the mortgage and home equity line of credit, and the payment the Wife is entitled to pursuant to this paragraph of the Agreement. However, in no event, shall any contract be accepted if it requires owner financing or purchase money financing in sellers points. If no offer is received within 90 days of the day the Marital Residence is first listed for sale, the parties agree to reduce the asking price pursuant to a price recommended by the listing agent and that they shall be bound by the recommendation of the agent. If the parties have not received an offer within 90 days of reducing the initial listing price, then they agree to reduce the asking price again pursuant to the recommendation of the agent. The parties shall keep reducing the price to a price recommended by the agent every 90 days until the property is sold. However, the listing price and sales contract shall always be of a sufficient sum to generate proceeds sufficient to pay the costs of sale, the mortgage and home equity line of credit, and the payment the Wife is entitled to pursuant to this paragraph of the Agreement. In any event, the parties may accept a non-conforming offer of purchase by mutual agreement in writing and may reduce the price of the property in less than 90 days by mutual agreement in writing. However, in no event shall the parties be required to accept a contract which requires seller financing or that the parties pay any percentage of the loan value towards closing costs.

A copy of this Agreement or an extract of it may be furnished to the settlement agent, who is hereby authorized to pay what the Wife is owed pursuant to this paragraph of this Agreement

without further authorization from the parties.  The settlement agent shall report the proceeds of sale on separate Form 1099 for each party.

  Until the Marital Residence is refinanced or sold and Wife is paid what she owed pursuant to this paragraph of the Agreement, Husband and Wife further agree that Husband shall be solely responsible for and shall timely and fully pay any and all liens, encumbrances or expenses for the Marital Residence, including, but not limited to, the mortgage, home equity line of credit, homeowner's insurance, real estate taxes, home owner's association dues, trash pickup and removal, or utilities, and shall indemnify and hold Wife harmless from any liability therefrom. Husband agrees he shall not allow the Marital Residence to be foreclosed upon.  Husband and Wife agree that the Husband shall not waste the Marital Residence nor shall Husband dissipate the Marital Residence until Wife is paid the sum she is entitled to under this paragraph of the Agreement.  Husband and Wife agree that the Husband shall not permit any other liens, judgments, or encumbrances to be made or entered against the Marital Residence until the property is sold or refinanced and Wife is paid the sum she is entitled to under this paragraph of the Agreement and that he shall indemnify and hold Wife harmless from any liability therefrom. In the event that Husband fails to timely and/or fully pay any and all liens, encumbrances or expenses for the Marital Residence, including, but not limited to, the mortgage, home equity line of credit, homeowner's insurance, real estate taxes, home owner's association dues, trash pickup and removal, or utilities, or permits any other liens, judgments, or encumbrances to be made or entered against the Marital Residence before the Marital Residence is refinanced or sold and Wife receives the sum of money she is entitled to under this paragraph of the Agreement, Husband will immediately notify Wife by telephone and in writing.  In the event the Husband has failed to pay any of the aforementioned expenses or fails in the past or fails to pay any of the aforementioned liens, encumbrances or expenses in the future and Wife has had to pay or pays the unpaid lien, encumbrance or expense then Husband shall have an obligation to repay the Wife the amount she paid or pays within thirty (30) days of the date of the execution of this Agreement in the case of past payments or within ten (10) days of the date she incurs the expense.  The parties agree Husband's obligations to make these payments shall be treated as spousal support subject to the terms and conditions of paragraph 28 of this Agreement.

  Husband and Wife agree that Wife may continue to reside in the Main House of the Marital Residence and shall have exclusive use and possession of the Main House until thirty (30) days after the date Husband has executed this Agreement.  At that time, Wife shall vacate the Main House and Husband shall have exclusive use and possession of all of the Marital Residence.  While Wife occupies the Main House, the Husband shall reside and have exclusive use and possession of the former office consisting of the sunroom, bar/kitchenette, bathroom, TV room, bedroom, and front entrance room and shall enter and exit the former office through the front entrance room and steps to the garage.  The door between the sunroom and the Main House shall remain locked with no access by either party.  Wife shall reside in the Main House of the Marital Residence free of charge and she shall not be obligated to pay the Husband any rent or

any other money for any other expense whatsoever. Husband agrees that he shall continue to solely pay all of the expenses associated with his occupation of the Marital Residence and for the Wife's occupation of the Main House of the Marital Residence, including, but not limited to the mortgage, home equity line of credit, homeowner's insurance, real estate taxes, home owner's association dues, trash pickup and removal, or utilities and that he shall indemnify and hold the Wife harmless for the same. Husband further agrees that he shall waive any and all claims he may have now or in the future for reimbursement or compensation from the Wife for his past or future payment of any and all expenses concerning the Marital Residence or his occupation thereof, or concerning the Main House of the Marital Residence or Wife's occupancy thereof, including, but not limited to, the mortgage-including any payment resulting in the reduction of the principal balance on the mortgage or any payment towards the interest owed on the mortgage, home equity line of credit, homeowner's insurance, real estate taxes, home owner's association dues, trash pickup and removal, or utilities.

At the same time that they agree that the Wife shall be allowed to continue residing in the Main House of the Marital Residence, the parties further agree and stipulate that they have not and are not cohabiting, and that Wife has been living separate and apart from the Husband with the intent to remain separated permanently since June 1, 2013, and each of them is hereby estopped from claiming to the contrary.

17.    **PERSONAL PROPERTY:** Each party shall have as his or her own property all of that party's own personal clothing, books, and effects. The Wife shall have as her own property free and clear of any claim or interest of the other all of the personalty set forth in the column titled "Nancy" on the attached Schedule A and incorporated in this Agreement by reference. The Husband shall have as his own property free and clear of any claim or interest of the other all of the personalty as set forth in the column titled "Frank" on the attached Schedule A and incorporated in this Agreement by reference.

18.    **AUTOMOBILES:** Husband and Wife agree that each shall retain all right, title and interest in the automobile currently in his or her own possession free of any interest of the other. In particular, Husband and Wife agree that Husband shall retain and the 2000 Chrysler 300 and Wife shall retain the 2012 Hyundai Sonata and the 2003 Mazda Pick Up. The Wife shall sign title of the 2007 Jeep Liberty over to the parties' daughter if she has not already done so. Husband and Wife further agree that each does hereby waive and release, and does hereby convey to the other, any and all claim or interest he or she has in the vehicle or vehicles in the possession of the other. Husband and Wife further agree that each shall be solely responsible for any liens, encumbrances or expenses, including the provision of automobile insurance, of the vehicle or vehicles he or she retains and shall indemnify and hold the other harmless from any liability therefrom except in case of the loan currently encumbering the Hyundai Sonata. The Husband agrees that he shall pay off the entirety of the loan on the Hyundai Sonata within sixty

(60) days of the execution of this Agreement and that he shall indemnify and hold Wife harmless from the same. Husband and Wife further agree that each shall remove the other's name from any liens or encumbrances on the vehicle or vehicles he or she retains through a refinance or qualified assumption of such lien or encumbrance or other method. Husband and Wife further agree that they shall execute any and all documents necessary to effectuate this provision, including the endorsement of the appropriate titles and/or powers of attorney.

In addition, Husband and Wife agree that Wife shall retain all right, title, and interest in the jointly titled 2009 Adam Trailer and the 2007 Adam Stock Trailer titled individually in Wife's name. Husband and Wife further agree that they shall execute any and all documents necessary to effectuate this provision, including the endorsement of the appropriate titles and/or powers of attorney. In particular, Husband agrees to sign title of the 2009 Adam Trailer over to the Wife.

19.    **BANK ACCOUNTS:** The parties have agreed between them, to their satisfaction, as to ownership, possession, and use of any and all bank accounts of any kind which are currently on deposit or which may have been on deposit in the past. Each party waives any past, present or future right each had or may have in the bank accounts.

20.    **INVESTMENTS:** Husband and Wife acknowledge that they have divided their investments (i.e., stocks, bonds, mutual funds, brokerage accounts) to their mutual satisfaction. Accordingly, Husband and Wife agree that each shall retain all right, title and interest in and ownership of all stocks, bonds, mutual funds or other funds on deposit in any and all accounts in his or her own name free and clear of any claim or interest of the other. Husband and Wife further agree to execute any documents necessary to effectuate the terms of this provision.

21.    **LIFE INSURANCE POLICIES:** Husband and Wife agree that each shall retain all right, title and interest in and ownership of all life insurance policies, including the cash value thereof, of which he or she is the current owner free and clear of any claim or interest of the other. Husband and Wife further agree that this provision does not address the designation of beneficiaries under such life insurance policies which may be addressed elsewhere in this Agreement. Husband and Wife further agree that each shall execute any and all documents necessary to effectuate the terms of this provision.

22.    **BUSINESS ENTITIES:** Husband and Wife agree that Wife shall retain all right, title and interest in Cavallini di Amore, hereinafter referred to as "the Business", which shall include, but not be limited to, inventory, tools, furniture, furnishings, fixtures, accounts of any nature (including accounts receivable), client information, goodwill, licenses, trade names, telephone numbers and any and all other assets or property, tangible or intangible, owned by the Business free of any claim or interest of Husband. Husband and Wife further agree that Husband does hereby waive any claim or interest in the Business. Husband and Wife further agree that

Wife shall be entitled to any and all income generated from the Business. Husband and Wife further agree that Wife shall be solely responsible for any and all liabilities of the Business and shall indemnify and hold Husband harmless from any liability therefrom, including, but not limited the company credit card. Husband and Wife further agree that each shall execute any and all documents necessary to effectuate the terms of this provision. In return for certain property belonging to the business which Husband shall be receiving in connection with this Agreement, Husband agrees to pay to Wife the sum of $32,000 as set forth in the Promissory Note executed by Husband prior to the date of this Agreement, a copy of which is attached as Exhibit B.

23.    **RETIREMENT PLANS AND ACCOUNTS:**

     (a)    Husband and Wife agree that Wife shall retain all right, title and interest in any and all pension, profit-sharing or deferred compensation plan(s) or retirement benefit(s) she currently owns, participates in or is otherwise entitled to or which she may own, participate in or be entitled to in the future free and clear of any claim or interest of Husband, including, but not limited to Wife's Jackson National SEP IRA, Wife's Guardian SEP IRA, and Wife's New York Life Insurance Company Nylic Retirement Plan . Husband and Wife further agree that Husband does hereby waive any claim to and releases to Wife any and all interest he may have in the pension, profit-sharing or deferred compensation plan(s) or retirement benefit(s) of Wife. Husband and Wife further agree to execute any and all documents necessary to effectuate the terms of this provision including, but not limited to, a release or waiver.

     (b)    Wife is the beneficiary of a Joint and Survivor Annuity in connection with Husband's Guardian Life pension. The parties agree to submit a QDRO to Guardian Life to memorialize Wife's status as a beneficiary of such Joint and Survivor Annuity.

     (c)    Husband and Wife agree that Husband shall continue to name or shall name Wife as the sole and irrevocable beneficiary of the 6 monthly installment life insurance benefit payments payable by the New York Life Insurance Company. Written proof of Wife's beneficiary status is attached hereto as Exhibit C.

     (d)    Except for the foregoing, Husband and Wife agree that Husband shall retain all right, title and interest in any and all pension, profit-sharing or deferred compensation plan(s) or retirement benefit(s) he currently owns, participates in or is otherwise entitled to or which he may own, participate in or be entitled to in the future free and clear of any claim or interest of Wife. Husband and Wife further agree that Wife does hereby waive any claim to and releases to Husband any and all interest she may have in the pension, profit-sharing or deferred compensation plan(s) or retirement benefit(s) of Husband. Husband and Wife further agree to execute any and all documents necessary to effectuate the terms of this provision including, but not limited to, a release or waiver.

24.    **DEBTS:**

(a)    Husband and Wife agree that Husband shall be solely responsible for the following debts and shall indemnify and hold Wife harmless from any liability therefrom:

| Debt | Balance | As Of |
|------|---------|-------|
| ~~World Master Card-5573~~ *Cancelled* | $ | |
| Wells Fargo Master Card-1507 | $ 15,173⁹⁵ | 1/27/15 |
| Wells Fargo Visa-4317 | $ 18,482.⁰³ | 1/23/15 |
| USAA Master Card-~~1473~~ 1731 | $ 23,453.²⁴ | 1/23/15 |

(b)    Husband and Wife further agree that Wife shall be solely responsible for the following debts and shall indemnify and hold Husband harmless from any liability therefrom:

| Debt | Balance | As Of |
|------|---------|-------|
| Chase Visa-* | $2,500. | February 11, 2015 |

(c)    Husband and Wife further agree that in addition to the above-referenced division of debts and except as set forth elsewhere in this agreement as to any specific debt, each shall be solely responsible for any and all debts, contracts, obligations or liabilities (including, but not limited to, notes, loans, mortgages, lines of credit, credit cards, judgments or any other debt of any nature) in his or her own name and for any and all debts, contracts, obligation or liabilities which he or she has incurred subsequent to June 1, 2013 and that each shall indemnify and hold the other harmless from any liability therefrom.

(d)    Husband and Wife further agree that each shall execute any and all documents necessary to effectuate this provision.

(e)    Husband and Wife each represent that he or she has no knowledge of any other debts, contracts, obligations or liabilities (including, but not limited to, notes, loans, mortgages, lines of credit, credit cards, judgments or any other debt of any nature) for which the other may be liable or which may secure or encumber any of the parties' marital property other than those set forth herein. Husband and Wife further agree that should any such debt, contract, obligation or liability be subsequently discovered, the party who incurred said debt, contract, obligation or liability shall be solely responsible for said debt and shall indemnify and hold the other harmless from any liability therefrom.

(f)    Husband and Wife further agree that neither party shall charge, or cause or permit to be charged, to or against the other, any purchases of merchandise, goods or services to

the credit account of the other, nor secure or attempt to secure any credit upon or in connection with the other or in his or her name.

25. **OMITTED PROPERTY:** Husband and Wife acknowledge that they have attempted, and have used due diligence, to identify and include within the provisions of this Agreement all property owned by them jointly or individually and that, to the best of their knowledge, neither party owns or has an interest in any other assets other than those disclosed in this Agreement. However, in attempting to identify and include all property owned by them, some property may have been inadvertently omitted from this Agreement. Notwithstanding such omission, Husband and Wife agree that any omitted property or asset, real or personal, shall in no manner affect the validity of this agreement which shall remain enforceable. Husband and Wife further agree that any such omitted property shall be disposed of as follows:

(a) any property or asset which would be considered to be "marital property" as that term is defined in Virginia Code Section 20-107.3(A) shall be divided equally.

(b) any property or asset which would be considered to be "separate property" as that term is defined in Virginia Code Section 20-107.3(A) shall be retained by the party in whose name such property is held free and clear of any claim or interest of the other.

26. **WAIVER OF EQUITABLE DISTRIBUTION:** Husband and Wife acknowledge that either party has the right to request a court of equity, ancillary to a divorce proceeding or thereafter, to make an equitable distribution of their marital property pursuant to Virginia Code Section 20-107.3 and that they have each been fully advised as to the legal effect and meaning of said statutory provision. Husband and Wife agree that the provisions of this agreement shall be in lieu of and in full satisfaction of their rights under such statutory provision. Husband and Wife, therefore, hereby waive their rights to request a court of equity to make an equitable distribution of the marital property.

27. **SPOUSAL SUPPORT:**

(a) Husband and Wife acknowledge that they considered the following factors in arriving at their agreement on spousal support:

1. The obligations, needs and financial resources of the parties, including but not limited to income from all pension, profit sharing or retirement plans, of whatever nature;

2. The standard of living established during the marriage;

3. The duration of the marriage;

4.    The age and physical and mental condition of the parties and any special circumstances of the family;

5.    The extent to which the age, physical or mental condition or special circumstances of any child of the parties would make it appropriate that a party not seek employment outside of the home;

6.    The contributions, monetary and nonmonetary, of each party to the well-being of the family;

7.    The property interests of the parties, both real and personal, tangible and intangible;

8.    The provisions made with regard to the marital property pursuant to this Agreement or by a court of competent jurisdiction pursuant to Virginia Code § 20-107.3;

9.    The earning capacity, including the skills, education and training of the parties and the present employment opportunities for persons possessing such earning capacity;

10.    The opportunity for, ability of, and the time and costs involved for a party to acquire the appropriate education, training and employment to obtain the skills needed to enhance his or her earning ability;

11.    The decisions regarding employment, career, economics, education and parenting arrangements made by the parties during the marriage and their effect on present and future earning potential, including the length of time one or both of the parties have been absent from the job market;

12.    The extent to which either party has contributed to the attainment of education, training, career position or profession of the other party; and

13.    Such other factors, including the tax consequences to each party, as are necessary to consider the equities between the parties.

(b)    Considering the circumstances of each in light of the above-listed factors

and considering his reasonable requirements, giving due consideration to his own ability to provide for his own support and maintenance, Husband, therefore, AGREES TO AND DOES HEREBY WAIVE ABSOLUTELY AND FOREVER FOR THE REST OF HIS LIFE ANY AND ALL PAST, PRESENT OF FUTURE CLAIMS FOR, DEMANDS FOR, OR RIGHTS (ASSUMING ANY) TO SPOUSAL SUPPORT, ALIMONY, OR SEPARATE MAINTENANCE THAT HE MAY HAVE FROM THE WIFE INCLUDNG, BUT NOT LIMITED TO, PERIODIC, REHABILITATIVE, LUMP SUM, OR PENDENTE LITE SPOUSAL SUPPORT; OR A RESERVATION OF ANY OF THE AFOREMENTIONED.

(c)     Considering the circumstances of each in light of the above-listed factors and considering his reasonable requirements, giving due consideration to his own ability to provide for his own support and maintenance, Husband shall pay to Wife the sum of Two Thousand Five Hundred Dollars and No Cents ($2,500.00) for the support and maintenance of the Wife beginning on June 1, 2014 and continuing thereafter on the first day of each month.

(d)     The parties agree that the spousal support payments required under paragraph 28(c) and 28(e) of this Agreement shall not be modified under any circumstances, unless and until the parties agree to a modification in a written amendment to this Agreement. Husband and Wife further agree that Husband's spousal support obligation pursuant to this provision shall terminate only upon the death of either party. Husband's spousal support obligation shall not terminate upon Wife's remarriage or habitual cohabitation with another person in a relationship analogous to a marriage for a period of less than or more than one year.

(e)     If Husband fails to pay or otherwise defaults on any of his obligations in this Agreement or all or part of Husband's liability for the obligations contained in this Agreement is discharged in bankruptcy, Husband agrees to pay the Wife enough money sufficient to pay any liability she incurs as a result within ten (10) days of being informed in writing that Wife incurred the liability and that these payment shall be in the nature of spousal support. Wife's rights under this paragraph shall not require Wife to petition a court of competent jurisdiction for an award of spousal support.

(f)     The parties agree that the spousal support paid pursuant to this Agreement is designated as excludable from the gross income of the payee under Section 71 of the Internal Revenue Code (I.R.C.) and non-deductible by the payor under I.R.C. Section 215, and both parties agree to treat the payments for federal (and state, if applicable) income tax purposes consistently with such designation of the Internal Revenue Code and acknowledge that under present federal tax law this election is given effect. Accordingly the parties acknowledge that such payments are neither includable in the payee's gross income under I.R.C. § 71(a)(1) nor deductible by the payor as alimony under I.R.C. Section 215, and both parties agree to treat the payments for federal (and state, if applicable) income tax purposes consistently with such designation.

28. **HEALTH INSURANCE AND MEDICAL EXPENSES:** Each party shall provide his or her own health insurance coverage, and neither party shall have any obligation to provide or assist with the provision of health insurance for the other party. By the same token, each party shall be solely responsible for his or her own medical expenses incurred either before this Agreement was signed and which remain unpaid at this time, or for any bills which occur after the date this Agreement is signed, and hold the other party harmless thereon. Neither party shall look to the other for any assistance in paying these debts, and neither party shall pledge the credit of the other toward any future medical expenses.

29. **LIFE INSURANCE:**

(a) Husband and Wife agree that Husband shall continue to maintain on his life the existing life insurance policy with Ohio National Life with a death benefit of $500,000.00 and shall name Wife as the sole and irrevocable beneficiary of $150,000 of such policy.

(b) Husband and Wife agree that Husband shall continue to maintain on his life the existing life insurance policy with New York Life Insurance Company with a death benefit of approximately $108,000 and shall name Wife as the sole and irrevocable beneficiary of such the death benefit of such policy.

(c) Husband and Wife further agree that, upon request of Wife, Husband shall provide verification to Wife that the policies named above are still in full force and effect and that Wife is named as the beneficiary of such policies as set forth above. Husband and Wife further agree that Husband shall not take any steps to remove Wife as a beneficiary of the portion of such policies set forth above, nor will he take any steps to reduce the death benefit payable to Wife under these policies and shall not take loans against the policies, fail to pay premiums as they become due and payable or take any other actions which would affect the benefit payable to Wife under these policies. Husband and Wife further agree that if Husband desires to change the above-referenced life insurance policies to another policy or policies which provides the same protections contemplated by this provision, including, but not limited to, the same death benefit payable to Wife, he may do so upon notice to Wife and upon the consent of Wife if she is satisfied that the terms of this provision will still be met. Husband and Wife further agree that such consent shall not be unreasonably withheld. Husband and Wife further agree that each shall execute any and all documents necessary, and complete all forms necessary, to effectuate the terms of this provision, including, but not limited to, applications, health insurance questionnaires and releases.

30. **ATTORNEY FEES AND COSTS:** Each party shall be solely responsible for his or her attorney fees and costs incurred in the negotiation, drafting and execution of this Agreement and, in the eventuality that divorce proceedings are filed, in the filing, prosecution

and attainment of a final decree of divorce and that each party does hereby waive any claim against the other for prepayment or for reimbursement for such fees.

32.   **BANKRUPTCY/INSOLVENCY:**

(a)   It is understood, mutually covenanted and mutually warranted that none of the financial duties and responsibilities of the parties to each other specifically referenced herein shall be dischargeable in bankruptcy pursuant to Sections 523(a)(5) and 523(a)(15) of the Bankruptcy Code, and further because each party has given *bona fide* consideration and relinquished marital rights for the same. The debts shall survive the filing of any petition in bankruptcy by either party, whether voluntary or involuntary, and all proceedings taken thereunder, as well as general assignment for the benefit of creditors or other proceedings based on insolvency, and claims hereunder shall at all times remain in full force and effect and enforceable until performed and discharged in accordance with the terms of this agreement.

(b)   In the event a party to this Agreement becomes a debtor in bankruptcy, voluntary or involuntary, or is the debtor in any proceeding based on insolvency, the creditor spouse shall be entitled to attorney fees and costs incurred in protecting his or her rights under this agreement, including support, in any such proceeding. Marital debts that have been assumed by a party under the terms of this Agreement are debts owed to the other party who has not filed for bankruptcy to the extent that creditors can seek payment from the non-filing party. The non-filing party is entitled to full indemnity from the filing party and such indemnity is in the nature of a domestic support obligation.

(c)   The parties further agree that if at any time an involuntary bankruptcy action is instituted against him and/or her, or either party institutes any action to bankrupt any of the debts for which the parties may be jointly liable absent the terms of this Agreement, the party who files or who causes the involuntary filing will, should the other party elect to also institute bankruptcy proceedings, pay any and all costs of court, attorney fees and any and all other expenses related to the institution of bankruptcy proceedings on behalf of the party forced to elect bankruptcy.

33.   **TAX CONSEQUENCES:**  Husband and Wife acknowledge that they have been advised, jointly and individually, that the most appropriate method for determining the tax consequences of this Agreement to each individual is to provide their tax advisor (other than their attorney herein) with a copy of this Agreement, before execution, receive his or her advice, counsel and criticism and be satisfied that he or she understands the tax consequences of this Agreement. Husband and Wife further acknowledge that either may elect not to seek such advice, counsel and criticism and assumes full, complete and exclusive responsibility for all tax consequences to him or her of this Agreement.

34.    **SOCIAL SECURITY BENEFITS**: This Agreement shall not be construed in any way to deny the rights of either party under the Social Security Act, as set forth in Title 42, United States Code, as it applies to the status of a spouse.

35.    **BINDING ON HEIRS**: Husband and Wife agree that all of the terms, conditions and provisions contained in this Agreement shall apply to, be binding upon and be obligatory upon his or her heirs, executors, administrators, personal representatives and assigns of each with the exception of the support provisions set forth herein which shall terminate upon the death of either party.

36.    **MUTUAL RELEASE AND DISCHARGE OF GENERAL CLAIMS**: Subject to the provisions of this agreement, Husband and Wife hereby mutually release and forever discharge, and by these presents does for himself or herself, and his or her heirs, legal representatives, executors, administrators and assigns, release and forever discharge the other of any and all causes of action, claims, rights or demands whatsoever in law or equity which either party ever had, or now has, against the other excepting only every right that is given or created by this agreement and the prosecution and attainment of a suit for divorce pursuant to Virginia Code Section 20-91(9)(a).

37.    **MUTUAL RELEASE OF CLAIMS TO PROPERTY AND ESTATE**: Husband and Wife hereby forever relinquish and release all right, title and interest which he or she has or ever may have in and to the real, personal, separate or marital property of the other, all right of dower or curtesy, all rights, title and interest which he or she has or ever may have in and to the property and assets of the other presently held or acquired in the future or estate of the other, at his or her death, and all right and interest to take against his or her Will or under the intestate laws, and each and every other right, title and interest he or she has or ever may have against the other, his or her heirs, executors, administrators and assigns, excepting only every right that is given him or her by this agreement.

38.    **COSTS OF ENFORCEMENT**: Husband and Wife agree that any costs, including, but not limited to counsel fees, court costs, investigation fees and travel expenses, incurred by a party in the successful enforcement of any of the agreements, covenants, or provisions of this Agreement, whether through litigation or other action necessary to compel compliance herewith, shall be borne by the defaulting party.

39.    **COUNTERPARTS**: This Agreement may be executed in several counterparts, each of which shall be deemed an original but all of which taken together shall constitute one and the same instrument. Further, more than one original of this Agreement may be executed and each executed copy shall constitute an original and all executed copies shall be deemed to constitute one and the same instrument.

40.    **TIME IS OF THE ESSENCE:**  Unless specifically indicated otherwise, time is of the essence as to all deadline or other dates upon which the parties are required to perform any duties required herein.

**WITNESS** the following signatures and seals:

REST OF PAGE INTENTIONALLY LEFT BLANK

_(signature)_ (SEAL)
FRANK A. PASSARELLI

_(signature)_ (SEAL)
NANCY L. WHEELER

COMMONWEALTH OF VIRGINIA,
[City] [County] of _Culpeper_

The foregoing Agreement was duly acknowledged before me on this 10th day of _February_ 2015, by Frank A. Passarelli.

_(signature)_
Notary Public

My Commission expires: 02/28/2017.

Commission ID No.: 7555337.

COMMONWEALTH OF VIRGINIA,
[City] [County] of _Charlottesville_, to-wit:

The foregoing Agreement was duly acknowledged before me on this 12th day of _February_, 2015, by Nancy L. Wheeler.

_Brenda Clifford_ (SEAL)
Notary Public

My Commission expires: 10-31-2015.

Commission ID No.: 7118587.



BRENDA CLIFFORD
NOTARY PUBLIC
REGISTRATION # 7118587
COMMONWEALTH OF VIRGINIA
MY COMMISSION EXPIRES
10-31-2015

Page 20 of 20

VIRGINIA:                                                    JLD # 160000177
    IN THE CULPEPER COUNTY CIRCUIT COURT

NANCY LEE WHEELER,
              Plaintiff,

v.                                          Case No.: CL15-283

FRANK A. PASSARELLI,
              Defendant.

## FINAL ORDER OF DIVORCE

This cause came to be heard this day upon Plaintiff's Complaint for Divorce; upon the Answer filed by the Defendant; and upon the Affidavit of the Plaintiff and the Affidavit of the Witness for the Plaintiff filed herein pursuant to Virginia Code § 20-106.

The Court, having considered all the evidence and the law in this matter, it is ADJUDGED, ORDERED and DECREED as follows:

**A.**    DIVORCE

It appearing to the Court independently of the admissions of either party in the pleadings or otherwise as follows:

1.    That Plaintiff and Defendant were lawfully married on April 11, 1998, in Culpeper, Virginia.

2.    That the Plaintiff is domiciled in and has been a *bona fide* resident of the Commonwealth of Virginia for more than six months next preceding the commencement of this suit and that the parties last cohabited as husband and wife in the City of Culpeper, VA.

3.    That both parties are of sound mind.

4.    That both parties are over the age of 18 years.

5.    That neither party is in the military service of the United States.


EXHIBIT
B

6.   That the parties have completed a one-year separation, and have lived separate and apart since on or about June 1, 2013, without any cohabitation and without interruption.

7.   That there are no minor children of the parties.

8.   That the parties have entered into a written Property Settlement Agreement dated February 10, 2015, *and filed herein* that resolves all issues of spousal support, equitable distribution, and other issues associated with the marriage.

Accordingly, it is ADJUDGED, ORDERED and DECREED that the Plaintiff, Nancy Lee Wheeler, be, and hereby is, granted a divorce *a vinculo matrimonii* from the Defendant, Frank A. Passarelli, on the grounds of a one-year separation pursuant to section 20-91(A)(9) of the Virginia Code.

**B.    AGREEMENT OF THE PARTIES**

The Court having reviewed the agreement of the parties dated February 10, 2015 and finding the same to be just and proper, it is further ADJUDGED, ORDERED, and DECREED that the Agreement is confirmed, ratified, and incorporated BUT NOT MERGED, herein as though each and every provision was recited herein and, except for the modification relating to the promissory note between the parties, the parties are hereby ordered to comply with its terms.

**C.**    Pursuant to the requirements of Va. Code Ann. §20-111.1(E), the following notice is set forth in this final order:

**Beneficiary designations for any death benefit, as defined in subsection B of §20-111.1 of the Code of Virginia, made payable to a former spouse may or may not be automatically revoked by operation of law upon the entry of a final decree of annulment or divorce. If a party intends to revoke any beneficiary designation made payable to a former spouse following the annulment or divorce, the party**

responsible for following any and all instructions to change such beneficiary designation given by the provider of the death benefit. Otherwise, existing beneficiary designations may remain in full force and effect after the entry of a final decree of annulment or divorce.

**D.**     Pursuant to Section 20-107.1 of the Code of Virginia the parties are hereby notified of the following provisions of Virginia law and the parties hereby represent to this Court that the information provided below is true information:

1.     The parents' personal information is as follows:

**Plaintiff:**

| | |
|---|---|
| Name: | Nancy Lee Wheeler |
| DOB: | ███████ |
| SSN: | See Attached Addendum |
| Driver's License #: | ███████ |
| Issuing State: | VA |
| Home Telephone #: | ███████ |
| Home Address | 83 Whitlock Road |
| | Culpeper, VA  22942 |
| Employer Name: | None |
| Employer Address: | None |
| Employer Telephone #: | None |
| Professional Licenses: | None |

**Defendant:**

| | |
|---|---|
| Name: | Frank A. Passarelli |
| DOB: | ███████ |
| SSN: | See Attached Addendum |
| Driver's License #: | ███████ |
| Issuing State: | VA |
| Home Address | 15763 Auburn Rd. |
| | Culpeper, VA  22701 |
| Home Telephone #: | ███████ |
| Employer Name: | self |
| Employer Address: | 15763 Auburn Rd. |
| | Culpeper, VA  22701 |
| Employer Telephone #: | ███████ |
| Professional Licenses: | Life, Health Insurance, Annuities, Variable Annuities, Securities 6, 63, 7 |

2.    The Order of this Court as to the amount and terms of spousal support are set

forth in the spousal support provision of the of the parties' Agreement, incorporated herein, and

reproduced here *in haec verba*:

*(c) Considering the circumstances of each in light of the above-listed factors
and considering his reasonable requirements, giving due consideration to his own ability
to provide for his own support and maintenance, Husband shall pay to Wife the sum of
Two Thousand Five Hundred Dollars and No Cents ($2,500.00) for the support and
maintenance of the Wife beginning on June 1, 2014 and continuing thereafter on the first
day of each month.*

*(d) The parties agree that the spousal support payments required under
paragraph 28(c) and 28(e) of this Agreement shall not be modified under any
circumstances, unless and until the parties agree to a modification in a written
amendment to this Agreement. Husband and Wife further agree that Husband's spousal
support obligation pursuant to this provision shall terminate only upon the death of
either party. Husband's spousal support obligation shall not terminate upon Wife's
remarriage or habitual cohabitation with another person in a relationship analogous to a
marriage for a period of less than or more than one year.*

*(e) If Husband fails to payor otherwise defaults on any of his obligations in
this Agreement or all or part of Husband's liability for the obligations contained in this
Agreement is discharged in bankruptcy, Husband agrees to pay the Wife enough money
sufficient to pay any liability she incurs as a result within ten (10) days of being informed
in writing that Wife incurred the liability and that these payment shall be in the nature of
spousal support. Wife's rights under this paragraph shall not require Wife to petition a
court of competent jurisdiction for an award of spousal support.*

*(f) The parties agree that the spousal support paid pursuant to this Agreement
is designated as excludable from the gross income of the payee under Section 71 of the
Internal Revenue Code (I.R.C.) and non-deductible by the payor under I.R.C. Section
215, and both parties agree to treat the payments for federal (and state, if applicable)
income tax purposes consistently with such designation of the Internal Revenue Code and
acknowledge that under present federal tax law this election is given effect. Accordingly
the parties acknowledge that such payments are neither includable in the payee's gross
income under I.R.C. § 71(a)(i) nor deductible by the payor as alimony under I.R.C.
Section 215, and both parties agree to treat the payments for federal (and state, if
applicable) income tax purposes consistently with such designation.*

3.    This Order does not provide for health care coverage for a spouse or former

spouse.

4.    The Defendant is in arrears in the payment of spousal support in the total amount

of $6,400, being $5,150 for 2014 and $1,250 for 2015. In addition to the monthly spousal

support obligation set forth in this Order, Defendant shall pay the amount of $250 per month to Plaintiff beginning January 1, 2016 until the arrearage has been paid in full.

    **5.**    If spousal support payments are ordered to be paid directly to the obligee, and unless the court for good cause shown orders otherwise, the parties shall give each other and the court at least 30 days' written notice, in advance, of any change of address and any change of telephone number within 30 days after the change.

    **6.**    In determination of a spousal support obligation, the support obligation as it becomes due and unpaid creates a judgment by operation of law.

**E.**    **OTHER PROVISIONS**

    **1.**    Pursuant to the terms of the parties' Property Settlement Agreement, Defendant agreed to pay Plaintiff the sum of $32,000, being the sum owing under a certain promissory note between the parties and attached as Exhibit B to the Property Settlement Agreement. In satisfaction of such obligation, Defendant shall pay the principal sum of $26,500 to Plaintiff in installments of $450 per month beginning January 1, 2016 until the entire sum is paid in full. This obligation is in the nature of support but shall not be income to Plaintiff nor a deduction to Defendant.

    **2.**    The Confidential Addendum ~~attached hereto~~ filed herein is hereby incorporated by reference pursuant to Virginia Code § 20-121.03.

    **3.**    The Clerk shall mail a certified copy of this Order to each party or their counsel of record at no cost; and

    This cause is continued upon the docket of the Court for entry of Qualified Domestic Relations Orders.

VIRGINIA:

    IN THE CULPEPER COUNTY CIRCUIT COURT

NANCY LEE WHEELER,

                Plaintiff,

v.                          Case No.: CL15-283

FRANK A. PASSARELLI,

                Defendant.

## ORDER

    This cause came to be heard on February 28, 2017 for a review on the status of the Defendant's payment of the amounts he was ordered to pay by the Court. Defendant appeared in person, *pro se*, and the Plaintiff was present in person with counsel, John H. Kitzmann, Esq. The Court heard testimony from the Defendant and the Plaintiff.

    The Court, having considered all the evidence and the law in this matter, and the arguments of counsel for Plaintiff and the Defendant, *pro se*, the Court finds as follows:

1. The Defendant has not paid the $16,200 arrearages and $1,877.17 of attorney's fees within sixty (60) days of December 2, 2017 as ordered by the Court.

    It is therefore ORDERED, ADJUDGED, and DECREED as follows:

1. The Court sentences the Defendant to 12 months in jail.

2. The imposition of this sentence is delayed until May 9, 2017 at 3:00 p.m. at which time the parties are ordered to return to Court for a review of the status of Defendant's payment of the sums he was ordered to pay by the Order of this Court dated February 14, 2017.

    THIS MATTER IS CONTINUED to May 9, 2017 at 3:00 p.m. for a review.

Entered    **MARCH 23, 2017**

                          JUDGE



EXHIBIT

C

I ASK FOR THIS:

COPY
MAILED
3-28-17

John H. Kitzmann (VSB# 44253)
Kim M. Mattingly (VSB# 73189)
Davidson & Kitzmann, PLC
211 East High Street
Charlottesville, Virginia 22902
Tel:  (434) 972-9600
Fax:  (434) 220-0011
Counsel for Nancy Lee Wheeler


SEEN

COPY
MAILED
3-28-17

Frank A. Passarelli, *Pro Se*
15763 Auburn Road
Culpeper, VA 22701


A COPY
Teste: Janice J. Corbin, Clerk
By: _____

VIRGINIA:
IN THE CULPEPER COUNTY CIRCUIT COURT

NANCY LEE WHEELER,
                              Plaintiff,

v.                                        Case No.: CL15-283-01

FRANK A. PASSARELLI,
                              Defendant.

## ORDER OF CONTEMPT

This matter came up for review on May 9, 2017 upon the Court's Order dated April 12,

2017 that the imposition of sentence be delayed until a review on May 9, 2017, and upon the

Order to Show Cause dated April 12, 2017. The Plaintiff was present in person and through her

counsel, John H. Kitzmann, Esq. The Defendant, Frank Passarelli, was present, *pro se*. Upon

the testimony and evidence offered <u>ore tenus</u> and the arguments of counsel for the Plaintiff and

of the Defendant, *pro se*, the Court makes the following findings:

1. The Defendant has made no payments of the amounts due under this Court's Final

Order of Divorce dated February 17, 2016 for the months of December 2016, January 2017,

February 2017, March 2017 and April 2017 for a total amount of $16,000.

2. Since the last hearing in this matter, the Defendant has paid the sum of $11,100 of the

$16,200 arrearage owed to Plaintiff and he has paid $1,250 of the $1,877.17 attorney's fee award

owed to Plaintiff.

Accordingly, it is ORDERED that:



1. Defendant is in contempt for his failure to pay the amount due under this Court's Final Order of Divorce dated February 17, 2016 for the months of December 2016, January 2017, February 2017, March 2017 or April 2017.

2. The total sum unpaid by Defendant for those five months is $16,000 and Defendant is ordered to pay such amount to Plaintiff.

3. The Defendant shall pay the sum of $600 to Plaintiff for her attorney's fees.

4. The Defendant may purge his contempt by the payment of all sums he has failed to pay and by the payment of all attorney's fees awarded by the Court.

5. The imposition of the sentence previously imposed on Defendant is delayed until August 8, 2017 at 1:30 p.m.

6. The Defendant is ordered to return to Court on August 8, 2017 at 1:30 p.m. for a review of the status of Defendant's payment of the amounts ordered by this Court.

The endorsement of counsel is dispensed with by the Court pursuant to Rule 1:13.

A certified copy of this Order shall be mailed to counsel for the Plaintiff and to the Defendant, *pro se*.

Entered _____ 5/19/17

_____
JUDGE

I ASK FOR THIS:

COPY
MAILED
5-26-17

John H. Kitzmann (VSB# 44253)
Kim M. Mattingly (VSB# 73189)
Davidson & Kitzmann, PLC
211 East High Street
Charlottesville, Virginia 22902
Tel: (434) 972-9600
Fax: (434) 220-0011
Counsel for Nancy Lee Wheeler

COPY
MAILED
5-26-17

FRANK A. PASSARELLI

VIRGINIA, IN CULPEPER COUNTY CIRCUIT COURT CLERK'S OFFICE
I CERTIFY THAT THE DOCUMENT TO WHICH THIS AUTHENTICATION
IS AFFIXED IS A TRUE COPY OF A RECORD IN THE CULPEPER COUNTY
CIRCUIT COURT, THAT I HAVE CUSTODY OF SAID RECORD, AND THAT
I AM THE CUSTODIAN OF THAT RECORD.
GIVEN UNDER MY HAND AND THE SEAL OF THE COURT, THIS _____
_____ DAY OF _____ May _____ 201_
TESTE: JANICE J. CORBIN, CLERK
BY: _____ DEPUTY CLERK



VIRGINIA:
    IN THE CULPEPER COUNTY CIRCUIT COURT

NANCY LEE WHEELER,
                            Plaintiff,

v.                                          Case No.: CL15-283

FRANK A. PASSARELLI,
                            Defendant.

## ORDER

This matter came up for review on August 8, 2017 upon the Court's Order of Contempt
dated March 23, 2017 ordering Defendant to pay $16,200 in arrearages through November 2016
and attorney's fees of $18,77.17 ("Contempt #1"), upon the Order of Contempt dated May 19,
2017 ordering Defendant to pay the sum of $16,000 in arrearages from December 2016 through
April 2017 and $600 in attorney's fees ("Contempt #2"), and upon the review hearing on August
8, 2017. The Plaintiff was present in person and through her counsel, John H. Kitzmann, Esq.
The Defendant, Frank Passarelli, was present, *pro se*. Upon the testimony and evidence offered
<u>ore tenus</u> and the arguments of counsel for the Plaintiff and of the Defendant, *pro se*, the Court
makes the following findings:

1. The Defendant has purged himself of contempt for Contempt #1 by the payment of
   $16,200 in arrearages and $1,877.17 in attorney's fees.

2. The Defendant has not yet purged himself of contempt for Contempt #2 but has paid
   the sum of $4,000 toward the $16,000 arrearage balance under Contempt #2, leaving



a balance of $12,000 in arrearages due under Contempt #2 and $600 in attorney's fees

due under Contempt #2.

Accordingly, the Court ORDERS:

1.      The Defendant may purge his contempt by the payment of all sums he has failed

to pay and by the payment of all attorney's fees awarded by the Court.

2.      The Defendant is ordered to pay an additional $500 in attorney's fees to Plaintiff.

3.      This matter is continued on October 24, 2017 at 3:00 p.m. for a review of the

status of Defendant's payments of the amounts ordered by this Court.

The endorsement of counsel is dispensed with by the Court pursuant to Rule 1:13.

A certified copy of this Order shall be mailed to counsel for the Plaintiff and to the

Defendant, *pro se*.

Entered ____11/09/17_____

_____
JUDGE

I ASK FOR THIS:

COPY
MAILED
11-17-17

John H. Kitzmann (VSB# 44253)
Kim M. Mattingly (VSB# 73189)
Davidson & Kitzmann, PLC
211 East High Street
Charlottesville, Virginia 22902
Tel: (434) 972-9600
Fax: (434) 220-0011
Counsel for Nancy Lee Wheeler

COPY
MAILED
11-17-17

FRANK A. PASSARELLI

VIRGINIA: IN CULPEPER COUNTY CIRCUIT COURT CLERK'S OFFICE
I CERTIFY THAT THE DOCUMENT TO WHICH THIS AUTHENTICATION
IS AFFIXED IS A TRUE COPY OF A RECORD IN THE CULPEPER COUNTY
CIRCUIT COURT, THAT I HAVE CUSTODY OF SAID RECORD, AND THAT I AM
THE CUSTODIAN OF THAT RECORD.
GIVEN UNDER MY HAND AND THE SEAL OF THE COURT, THIS
_____ DAY OF _____
TESTE: JANICE J. CORBIN, CLERK
BY: _____ DEPUTY CLERK

| Dates | Spousal | Arrearage | Installment | Payment | Balance |
|---|---|---|---|---|---|
| Jan-16 | $2,500 | $250 | $450 | | $3,200 |
| Feb-16 | $2,500 | $250 | $450 | | $6,400 |
| Mar-16 | $2,500 | $250 | $450 | | $9,600 |
| Apr-16 | $2,500 | $250 | $450 | | $12,800 |
| May-16 | $2,500 | $250 | $450 | | $16,000 |
| Jun-16 | $2,500 | $250 | $450 | | $19,200 |
| Jul-16 | $2,500 | $250 | $450 | | $22,400 |
| Aug-16 | $2,500 | $250 | $450 | | $25,600 |
| Sep-16 | $2,500 | $250 | $450 | | $28,800 |
| Oct-16 | $2,500 | $250 | $450 | | $32,000 |
| Nov-16 | $2,500 | $250 | $450 | $19,000 | $16,200 |
| Dec-16 | $2,500 | $250 | $450 | | $19,400 |
| Jan-17 | $2,500 | $250 | $450 | | $22,600 |
| Feb-17 | $2,500 | $250 | $450 | | $25,800 |
| Mar-17 | $2,500 | $250 | $450 | | $29,000 |
| Apr-17 | $2,500 | $250 | $450 | $16,200 | $16,000 |
| May-17 | $2,500 | $250 | $450 | | $19,200 |
| Jun-17 | $2,500 | $250 | $450 | | $22,400 |
| Jul-17 | $2,500 | $250 | $450 | | $25,600 |
| Aug-17 | $2,500 | $250 | $450 | $4,000 | $24,800 |
| Sep-17 | $2,500 | $250 | $450 | | $28,000 |
| Oct-17 | $2,500 | $250 | $450 | | **$31,200** |



| Dates | Spousal | Arrearage | Installment | Balance |
|---|---|---|---|---|
| | | | | |
| Jan-17 | $2,400 | | | $2,400 |
| Feb-17 | $2,500 | $250 | $450 | $5,600 |
| Mar-17 | $2,500 | $250 | $450 | $8,800 |
| Apr-17 | $2,500 | $250 | $450 | $12,000 |
| May-17 | $2,500 | $250 | $450 | $15,200 |
| Jun-17 | $2,500 | $250 | $450 | $18,400 |
| Jul-17 | $2,500 | $250 | $450 | $21,600 |
| Aug-17 | $2,500 | $250 | $450 | $24,800 |
| Sep-17 | $2,500 | $250 | $450 | $28,000 |
| Oct-17 | $2,500 | $250 | $450 | $31,200 |
| Balance | $25,000 | $2,500 | $4,500 | |


EXHIBIT
G
Blumberg No. 5518